PEOPLE OF PUERTO RICO, Petitioner, *v.* DISTRICT COURT OF ARECIBO, Respondent.

No. 874. Argued February 20, 1933.—Decided March 16, 1933.

R₁ *A. Gómez, Fiscal,* for petitioner.  *A. Reyes Delgado* for defendant in the main proceeding.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The *Fiscal* of this Supreme Court filed a petition for a writ of certiorari directed to the District Court of Arecibo in the case of *People of Puerto Rico* v. *Pedro P. Pagán,* a prosecution for adulterating milk. The writ was issued, and the hearing was held on the 20th of the current month of February, with the attendance of the *Fiscal* and the appearance of the defendant Pagán by his counsel.

It appears from the petition and the record of the proceedings sent up that the district attorney of Arecibo filed the following information against Pagán:

"The district attorney charges Pedro P. Pagán with the crime of adulterating milk, a misdemeanor, committed as follows:

"The defendant, Pedro P. Pagán, on October 27, 1931, at Hatillo, Puerto Rico, which forms part of the judicial district of Arecibo, did unlawfully, wilfully, maliciously, and criminally keep for sale and transportation, with the intent of using it for human consumption, cow's milk adulterated with boric acid or one of the salts derived therefrom and diluted with water added artificially.

"The prosecuting attorney further charges that prior to the date when the above facts took place, to wit, on February 11, 1931, the said defendant, Pedro P. Pagán, was convicted of a violation of section 1 of the Act providing punishment for the adulteration of milk, approved August 12, 1925, by a final judgment of the District Court of Mayagüez, dated February 11, 1931, and was sentenced to pay a fine of $25, which the defendant paid."

The defendant pleaded not guilty, and at the trial the prosecuting attorney introduced, among other evidence, the following:

"District Attorney: I offer in evidence a certificate of the clerk of the District Court of Mayagüez attesting to the fact that on February 11, 1931, judgment was rendered against Pedro P. Pagán for adulterating milk.

"Attorney Reyes Delgado: I have no objection.

"Judge: The document is admitted and marked, 'No. 3, District Attorney.'

" 'Exhibit 3, District Attorney.—In the District Court for the Judicial District of Mayagüez. . . The court after hearing the evidence introduced, and the case having been submitted for final decision, finds the defendant Pedro P. Pagán guilty of KEEPING AND OFFERING FOR SALE AND WITH THE INTENT OF USING IT FOR HUMAN CONSUMPTION, ADULTERATED MILK, and therefore it sentences him. . .' "

The certificate of the clerk goes on to state that on appeal to this Supreme Court said judgment was affirmed, and that the same was satisfied on June 24, 1931, by payment of the fine by the defendant.

At the close of the evidence for the prosecution, the defendant moved for a nonsuit, thus:

"Attorney Reyes Delgado: We are going to ask the court to peremptorily discharge the defendant, on two grounds: First, because no crime or violation by the defendant of section 1 of the Act providing for the adulteration of milk and for other purposes, of August 12, 1925, has been shown. Second, because even if those acts were committed by him, this Hon. District Court of Arecibo lacks jurisdiction of the cause."

The prosecuting attorney opposed this motion. The court granted time for the filing of briefs, and finally held:

"For the reasons stated, the motion for nonsuit made by the defendant is sustained as regards the second mode alleged in the information, that is, keeping for sale adulterated milk, and denied as to the first mode, that is, transporting adulterated milk to be used for human consumption."

The defense then stated that it had no evidence to offer, and the case was submitted for final decision. Judgment was rendered as follows:

"  *        *        *        *        *        *        *        *

"And the court hereby decides the motion for nonsuit by sustaining the same as to the second mode and dismissing it as to the first mode, and it finds Pedro P. Pagán guilty of transporting adulterated milk to be used for human consumption and sentences him to pay a fine of $100 and, in default of such payment, to be confined in jail one day for each dollar left unpaid, and in addition, to pay the costs of these proceedings."

It is alleged in the petition herein that the court refused to find the defendant guilty of a second offense and to punish him as prÒvided by law for such cases. Such refusal of the court does not appear from the record unless it be by implication. Nor does the record show the reasons which led the court to act as it did.

The *Fiscal* says that the reason was that the first conviction had been for keeping and offering for sale adulterated milk, whereas the second conviction was for transporting adulterated milk. He claims that the court erred because, as two modes of the same offense or two offenses of the same character were involved, the commission of a subsequent offense was clear. At first view, the *Fiscal* seems to be right.

Section 1 of Act No. 77 of 1925 provides:

"Every person who adulterates or dilutes milk and every person who sells, offers or keeps for sale, or who transports or stores milk to be used for human consumption, and every person using milk adulterated or diluted for industrial purposes, when such milk is to be used in the preparation of food for human consumption, shall be guilty of misdemeanor and, upon conviction, shall be punished for the first offense by a fine of not less than twenty-five (25) nor more than one hundred (100) dollars; *Provided,* That subsequent offenses shall entail confinement in jail for a term of from six months to one year, a fine of five hundred (500) dollars and the revocation of the license."

In discussing the subject of a prior conviction as the basis for imposing a more severe penalty, Corpus Juris says:

"While it is always necessary, under the statutes, that there should be a prior conviction of accused in order to authorize a more severe penalty to be imposed upon a second conviction or upon successive convictions, the character of the prior or subsequent conviction, on which the infliction of the enhanced penalty depends, can be determined only by a construction of the particular statute in each jurisdiction. Under some statutes it is not necessary that the second conviction should be for an offense of the same character and grade as that of which accused was convicted previously, while others refer to successive convictions for violations of the same statute. A statute which provides increased penalties for subsequent offenses specifically named does not require that the second offense shall be a repetition of the identical crime of which the offender was convicted, but refers to any one of those specifically mentioned. A statute authorizing a more severe penalty to be imposed when defendant has been convicted previously of the 'same offense' does not mean the identical offense but one of like character to that for which he is then on trial. An offense is no less a 'similar offense' to one previously committed by reason of the fact that the penalties for the two differ." 16 C. J. 1340.

Ruling Case Law, in discussing the same subject under the title "Identity of Offenses," says:

"The phrase 'the same offense' as used in statutes providing for a greater punishment in case a person is subsequently convicted of the same offense, does not necessarily mean that the acts constituting the offense must be exactly alike, but that they must be of the same character. Thus where one is convicted of violating a statute prohibiting the selling or giving away of intoxicating liquor or owning or keeping it with the intent to sell or give it away, a conviction of selling intoxicating liquor contrary to the statute is available to enhance the penalty on a subsequent conviction for a violation of the statute in keeping with the intent to sell." 8 R.C.L. 273.

In volume 58 of American Law Reports, at pages 30 and 32, among other things, it is said:

"In those cases where the question arose whether or not the offense for which the conviction was had must be identical in nature

with the principal offense charged, it is held in general that the two offenses need not be identical in nature, but that similarity is sufficient.

"In *People* v. *Bishop* the court, in construing par. 23 of Search and Seizure Act, relating to intoxicating liquors, held that the prior conviction for a violation of the act need not be for the identical offense as the second violation of the act; that the fact of any prior violation of the act would support a charge against the defendant as a second offender.

"Also the court, in passing on the question of constitutionality of a statute enhancing the punishment for the second and third commissions of any of the acts of burglary, grand larceny, horse stealing, robbery, forgery, or counterfeiting, held in *Kelly* v. *People* that under the act it was not necessary that the second or third offense be of the same nature or grade as the first offense; for by the language of the statute the enhanced punishment was for a subsequent violation of 'any one' of such crimes.

"And the court in *McConnell* v. *People* held that, where the former offense was a sale of intoxicating liquors, while the alleged second offense was a transportation of liquor, there was a 'second offense' so as to subject the defendant to the enhanced punishment within par. 22 of the Act of 1915. The court said that the two convictions need not be for identical offenses; there need only be two convictions for two violations of the prohibition laws.

"It was held in *State* v. *Sawyer* that, where the statute provided a penalty for selling, furnishing, or giving away, or owning, keeping, or possessing with intent to sell, furnish, or give away, intoxicating liquor or cider, in violation of law, and further provided for an increased penalty for a second offense, a conviction for violating the statute in any one of the forms stated was available to enhance the penalty on a subsequent conviction for a violation of the statute in another form.

"*.     .     .     .     .     .     .     .

"In *State* v. *Miglin* . . . the court held that any prior offense under the act placed the defendant on his commission of the principal offense charged, in the status of a 'second offender.' The court said that it was immaterial what particular portion of the act was violated, i.e., whether selling or owning or keeping with intent to sell, intoxicating liquor. The court set aside the contention of the defendant, that all of the offenses of violating different portions of the act

constituted but one continuing offense, and the contention that it was error for the court to give the act the effect of making the defendant a second offender under each count in the information, and in imposing the sentence accordingly.''

In a note published in 24 L.R.A. (N. S.), pp. 432 to 439, the holding in the case of *Muckenfuss* v. *State,* 55 Tex. Crim. Rep. 216, 117 S. W. 853, is cited to the effect that—

''A conviction for any violation of the Sunday law would serve as a former conviction for 'the same offense,' where the defendant was subsequently convicted on the charge of permitting a theatre to be open on Sunday,—the phrase 'the same offense' meaning merely an offense of a like character.''

In most of the cases above cited, it appears that the statute used the words ''subsequent conviction for the same offense'' and that these words have been interpreted to mean subsequent conviction for offenses of the same nature or character, the prior violation of the law in any one of the modes prescribed being sufficient. The Puerto Rican statute involved herein is the one which provides ''punishment for the adulteration of milk,'' and prescribes the various ways in which the offenses may be committed, and then merely states with reference to subsequent offenses: ''Provided that subsequent offenses shall entail confinement . . .''

That simple formula was adopted in lieu of the more specific one contained in the previous act and which might give rise to some doubt, to wit: ''Provided the person found guilty a second time of adulterating, diluting, selling, offering or keeping adulterated milk for sale, shall be punished by . . . ''

Having reached the above conclusions, can this Supreme Court, in this special proceeding in certiorari, remand the case to the district court in order that the latter may enlarge its judgment in accordance with the principles set forth in this opinion, as is sought by the *Fiscal?*

The Act of 1904, which authorizes the issuance of writs of certiorari, defines this remedy as follows:

"A writ issued by a superior to an inferior court requiring the latter to send to the former a certified copy of some proceeding therein pending, or the record and proceedings in some cause already terminated in cases where procedure is not according to the course of the law, and to complete the proceedings when the lower court refused to do so upon erroneous grounds."

In the case at bar, the court below does not seem to have refused to terminate the proceeding, but rather to convict the defendant as a persistent offender because he was not one, according to the court's interpretation of the statute. However, neither its decision on this point nor the reasons therefor appear from the record, as we have stated.

Was the procedure followed by the court below in accordance with the law? In order to answer this question properly it becomes necessary to first determine what is meant by procedure in the law of certiorari.

Escriche, in his *Diccionario Razonado de Legislación y Jurisprudencia,* volume 4, page 667, states that judicial procedure is "the institution or prosecution of a cause or proceeding of a civil or criminal character," and then he analyzes the various kinds of judicial proceedings.

The word used in the English text of the statute is "procedure." In summarizing the jurisprudence which defines this term, it is said in 50 Corpus Juris, p. 425:

"As a law term, said to be not well understood; so broad in its signification that it is seldom employed as a term of art; generally defined as including in its meaning whatever is meant by the three technical words 'pleading,' 'evidence,' and 'practice,' and perhaps nothing more; a general term including pleading, process, evidence, and practice—in fact, every step that may be taken from the beginning to the end of a case; the modes of conduct of litigation and judicial business, as distinguished from that branch of the law which gives or defines rights."

In the case of *Mahoning Valley R. Co.* v. *Santoro*, 93 Oh. St. 53, 56, 112 N. E. 190, cited in note 68, it was said:

"While 'practice' or 'procedure' is:
'The mode of proceeding by which a legal right is enforced; that which regulates the formal steps in an action or other judicial proceeding; the course of procedure in courts; the form, manner, and order in which proceedings have been and are accustomed to be had; the form, manner, and order of conducting and carrying on suits or prosecutions in the courts through their various stages, according to the principles of law, and the rules laid down by the respective courts.' "

In view of the wide scope of the term, the better rule is to construe it with reference to its context and the object of the particular statute in which it is used. See 50 C. J. 426.

The jurisprudence of this Supreme Court as to when certiorari lies is indeed already abundant, a distinction having been made between the ordinary certiorari proceeding, which is the one prescribed by the Act of 1904, and the other proceedings authorized by law in special cases.

In order to determine the scope of the former, the statute has been construed in the light of the jurisprudence of the courts on the mainland. Perhaps a correct summary of our own jurisprudence would be as follows: The writ of certiorari lies where there is no other effective remedy in the ordinary course of law and some question of jurisdiction or procedure is involved, the issuance of the writ being within the discretion of the court. The rule is easy to state. The difficulty lies in its application. There are cases so clear, so typical of jurisdiction or procedure, that no doubt arises as to them, but there are others which require careful consideration in order to determine their nature.

There is no doubt that the District Court of Arecibo had jurisdiction to act in the case at bar and to decide the question raised on its merits. Did it commit any error of procedure? The one which becomes apparent at first view is the failure of the court to expressly state its finding on the question of a

subsequent offense, so that the record might speak for itself with all clearness; but the mere remand of the case in order to correct this error would be of no consequence. It would involve a matter of form, not of substance.

However, since the question of form is interlaced with that of substance, this Court might—especially in view of the fact that the remedy by appeal is not available—not only direct the court below to enter a specific finding, but also to do so in accordance with the principles laid down in this opinion, reserving, of course, to the defendant all the defenses to which he might be entitled.

But we shall not so decide. The following circumstances exist in this case: The judgment of the district court was rendered on February 8, 1932. The *Fiscal* took an appeal therefrom which was dismissed. The petition for a writ of certiorari was filed on December 27, 1932, or ten months after the judgment had been rendered. When the hearing in the certiorari proceeding was held, the judgment had already been satisfied, as stated by the attorney for the defendant. It is now too late to intervene.

Therefore, the writ issued must be discharged, the record returned to the court of its origin, and the petition dismissed.